UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WACKO'S TOO, INC., )
a Florida corporation doing business as )
WACKO's, ) CASE NO.: 3:18-cv-74-J-32MCR
)
Plaintiff, )
)
vs. )
)
CITY OF JACKSONVILLE, a Florida )
municipal corporation, and )
KEVIN L. JONES, individually, )
)
Defendants. )
_____/

2018 JAN -4 PM 2:23 FILED

## COMPLAINT FOR DECLARATORY JUDGMENT
## AND DAMAGES

Plaintiff, WACKO'S TOO, INC., files this Complaint against the CITY OF

JACKSONVILLE and KEVIN L. JONES, individually, pursuant to 42 U.S.C. §1983,

seeking a judgment declaring that Chapter 420 of the City of Jacksonville Code of

Ordinances has been unconstitutionally applied against it in violation of the First, Fourth

and Fourteenth Amendments. Plaintiff further demands damages against both Defendants

under state and Federal law for the losses occasioned by the unconstitutional application

of the City's laws and policies against the Plaintiff.

### JURISDICTION

1.      This suit is brought pursuant to 42 U.S.C. §1983:

Every person who, under color of any statute, ordinance, regulation,
custom, or usage, of any State or Territory or the District of Columbia,
subjects, or causes to be subjected, any citizen of the United States or other
person within the jurisdiction thereof to the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

2.      This Court has "Federal Question" jurisdiction pursuant to 28 U.S.C. §1331 to hear cases arising under the Constitution of the United States, under 28 U.S.C. §1343(3) to redress the deprivation under color of state law of any right, privilege or immunity secured by the Constitution, and under 28 U.S.C. §1343(4) to secure equitable or other relief for the protection of civil rights.

3.      The Court has the authority to issue declaratory judgments pursuant to 28 U.S.C. §§2201 and 2202, and Rule 65, Fed.R.Civ.P.

4.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5.      The Court may enter an award of attorney's fees and costs pursuant to 42 U.S.C. §1988.

6.      This Complaint seeks declaratory relief to prevent violations of the Plaintiff's rights, privileges and immunities under the Constitution of the United States and Title 42 U.S.C. §§1983 and 1988, specifically seeking redress for the deprivation under color of state statute, ordinance, regulation, custom or usage of rights, privileges, and immunities secured by the Constitution and laws of the United States. The rights sought to be protected in this cause of action arise and are secured under the First, Fourth and Fourteenth Amendments to the Constitution.

7.      This action seeks a judicial determination of issues, rights and liabilities embodied in an actual and present controversy between the parties involving the constitutionality of certain Ordinances, actions and policies of the Defendants. There are

substantial *bona fide* doubts, disputes, and questions that must be resolved concerning the Defendants' laws, policies and actions taken under color and authority of "state" law and procedures, in violation of Plaintiff's rights under the First, Fourth and Fourteenth Amendments to the United States Constitution, as well as under state law.

## VENUE

8.     Venue is proper in the Middle District of Florida, Jacksonville Division, since the laws, policies and actions complained of are those of the City of Jacksonville, Florida, which is within the district and geographical area assigned to the Jacksonville Division.

## PARTIES

9.     Plaintiff, WACKO'S TOO, INC. is a Florida corporation which operates an adult dancing facility located at 3701 Emerson Street, Jacksonville, Duval County, Florida. The subject property is located within the municipal boundaries of the City of Jacksonville. Plaintiff is the entity beneficially interested in the relief herein sought and seeks to invoke the original jurisdiction of this Court on account of the facts and matters herein stated.

10.     Defendant CITY OF JACKSONVILLE, ("Jacksonville") is a Florida consolidated municipal corporation, organized and operating under the laws of the State of Florida.

11.     All references to Defendant JACKSONVILLE, are, *inter alia,* understood to include any and all of its departments, agents, officials, and employees, and specifically including the City's Municipal Codes Compliance Division and the Jacksonville Fire and Rescue Department.

12. Defendant KEVIN L. JONES is a natural person, *sui juris* (hereinafter referred to as "JONES" or "Fire Marshall"). JONES is employed by the CITY OF JACKSONVILLE as a Fire Marshall and he acted in that capacity at all times material to this action. KEVIN L. JONES is sued in his individual capacity.

## COLOR OF STATE LAW

13. As a political subdivision of the State of Florida, organized and operating under the laws of the State of Florida, Defendant CITY OF JACKSONVILLE and its agents, were, and are, acting under color of state law and authority.

## BACKGROUND FACTS

14. Plaintiff owns and operates a "gentlemen's club" or cabaret known as "Wacko's" which features live exotic dance performances within the City limits of Jacksonville, Florida.

15. Performers at Wacko's wear coverings over their breasts, buttocks and pubic region. The dancers perform choreographed routines set to contemporary music. The format may generally be described as a "bikini bar".

16. Plaintiff maintains that the human body is a thing of beauty which, when combined with music and rhythmic motion in the form of dance, conveys an important message of eroticism. Plaintiff believes that providing this form of expressive communication to the public is a beneficial social activity which enhances individuals' conscious ability to assimilate and consider various issues involving sexual candor and the interest in human sexuality that all human beings have to a greater or lesser degree. Plaintiff further believes that this expression enhances the appreciation of the human body, with an emphasis on the consideration of popular contemporary concepts of physical attractiveness

and the stimulating and entertaining aspects of same, which are clear characteristics of a normal and healthy interest in human sexuality.

17.     The expression offered by Plaintiff's businesses is not intended to be, nor is it, obscene as contemplated by contemporary community standards. Plaintiff does not intend this expression to appeal to any prurient interest. These performances are presumptively protected by the First Amendment to the Constitution of the United States. Plaintiff has a clear legal right to engage in protected speech of this nature.

18.     This expressive activity is performed before a consensual audience, all over the age of 18 years, desirous of receiving and enjoying the message conveyed by the entertainer of normal human sexual interest and sensual subtleties.

19.     The exotic dance performances communicate a specific message of eroticism which includes both an intellectual component and an emotive component emphasizing sensuality, passion and excitement.

20.     Defendants object to the message communicated by the Plaintiff as well as by other "bikini bars" and sexually oriented businesses operating within the City.

21.     WACKO'S currently holds a Chapter 151 dancing entertainment establishment license issued by the CITY, which license is in good standing.

22.     WACKO'S has never been denied a dancing entertainment establishment license for violation of any codes provisions. Compliance with the City's building, safety and fire codes is a prerequisite for obtaining such a license. *See*, §151.205, Jacksonville Code.

23.     The actions complained of herein arise from a "DART raid" conducted by the CITY and JONES on or about March 30, 2017.

## HISTORY OF SUPPRESSING EROTIC EXPRESSION IN JACKSONVILLE

24.    The City of Jacksonville has had a long and sordid history of violating the First Amendment rights of "bikini bars", adult entertainment establishments and others who wish to promote erotic expression. The City has conducted a campaign over many years to censor, harass and intimidate these businesses in an effort to force existing businesses to close and to drive potential new businesses away from the community.

25.    This campaign against "bikini bars" and adult entertainment establishments has been reflected in numerous ordinances focusing exclusively on these businesses. Many of those ordinances have been declared unconstitutional over the years as violations of the First Amendment. *See, e.g.*, Erznoznick v. City of Jacksonville, 422 U.S. 205, 45 L Ed 2d 125 (1975); Bayside Enterprises, Inc. v. Carson, 470 F.Supp. 1140 (M.D. Fla. 1979); Lady J. Lingerie, v. City of Jacksonville, 176 F.3d 1358 (11th Cir. 1999); Howard v. City of Jacksonville, 109 F.Supp.2d 1360 (M.D. Fla. 2000); Albanese Enterprises, Inc. v. City of Jacksonville, 3:13-CV-1471-J-34MCR, 2014 WL 585425 (M.D. Fla. 2014).

26.    In State Court proceedings, the City's attempt to harass, punish and intimidate managers at bikini bars through arrests, citations and prosecutions for alleged violations of Chapter 151 (the Jacksonville ordinance regulating bikini bars), resulted in findings from several Judges that the Ordinance was unconstitutional as applied to the managers. *See, e.g.*, State v. Antonio Parise, Case No.: 2007-MO-009964 (Duval County Ct.), State v. Donald Anderson, Case No.: 2007-MO-007699 (Duval County Ct.), State v. Jennifer M. Harris, Case No.: 2007-MO-009962 (Duval County Ct.), State v. Loriann Black, Case No.: 2007-MO-007697 (Duval County Ct.), State v. Roger L. White, Case No.: 2007-MO-011480 (Duval County Ct.), State v. Tony Phelps, Case No.: 2007-MO-

011481 (Duval County Ct.).

27.      Having been thwarted in those attempts to harass and censor the Plaintiff and other similarly situated businesses, Defendants have resorted to the use of "DART raids" to directly censor and prohibit Plaintiff's speech by closing its business. Raids against other bikini bars have been conducted for the same purpose.

## ANATOMY OF A DART RAID

28.      The City of Jacksonville enforces its building, safety and fire codes through Chapters 420 and 518 of the Jacksonville Code of Ordinances.

29.      Chapters 420 and 518 are usually administered through a conventional code enforcement regime of the kind authorized by Chapter 162, Fla.Stat. In normal code enforcement proceedings, the City gives notice to a property owner in violation of the City's codes and affords the owner an opportunity to cure the defect. If the property owner does not bring the property into compliance within a reasonable period of time, a hearing is held before the City's code enforcement board (or special magistrate, as the case may be). If the public hearing results in a finding of culpability, the property owner is given a fixed period of time to come into compliance and is typically ordered to pay the costs of the investigation. If the property is still not brought into compliance with the City's Codes, the property owner is again given notice and is required to attend a second hearing before the code enforcement board. If the board finds that the property owner has not corrected the defect, a fine is levied against the property. Typically, the fine accrues daily and acts as a lien against the property. Under Florida law, the City is authorized to undertake a collection action, which may include foreclosure of the lien against the property. The

property owner is afforded the full panoply of appellate remedies to challenge any action taken by the code enforcement board.

30. The code enforcement proceedings described above are widely adopted in Florida and include a number of due process protections including notice, an opportunity to be heard at a public hearing, cross examination and the introduction of evidence, a neutral decision maker, and the ability to appeal any decision of the board.

31. The "normal" code enforcement procedures and protections described above are used by the City in almost every instance. The only notable exception is the use of "DART" raids and emergency closure orders which are applied almost exclusively against the Plaintiff and other disfavored bars, clubs and taverns.

32. The CITY originally created the "Drug Abatement Response Team" as a weapon against drug dealers who were known to frequent blighted areas of the City and, particularly, abandoned or poorly maintained buildings.

33. There is no specific legislative authority for the DART program. However, the Defendant justifies actions taken under the DART program under Chapters 420 and 518 of the Code.

34. Theoretically DART raids concentrate on properties which have repeated codes violations coupled with neighborhood complaints of illicit activity. Nominally code officials and/or the Fire Marshall would inspection the premises to determine whether the property is being used for illicit purposes and is so unsafe as to constitute an immediate threat to the health, safety and welfare of the public.

35.     In practice, however, DART raids have been used as a mere pretext and excuse to close Plaintiff's bikini bar, and as well as other disfavored businesses, without notice or an opportunity to be heard.

36.     Drug arrests in connection with DART raids against bikini bars are rare or nonexistent. To the extent such arrests have occurred, the frequency of such arrests is no higher than at other commercial establishments in the community.

37.     Over the years, DART raids are conducted against bikini bars, including Plaintiff's, without any prior inspection to determine whether an immediate threat to health, safety and welfare exists.

38.     Almost without exception, the commercial businesses which have been victims of the City's DART raids were not party to any active proceedings before the City's Code Enforcement Board at the time of the raids.

39.     Almost without exception, the Code officials had no knowledge of any particular violations of the City Code at bikini bars, until *after* the DART raids are conducted. Such was the case with the March 30, 2017 raid at Plaintiff's establishment and previous such DART raids.

40.     The City does not give citizens advance warning or notice that they are in violation of Chapters 420 or 518 prior to conducting the DART raids against disfavored businesses. Historically, the City and its agents, including JONES, have declared that an emergency exists in over ninety percent (90%) of all DART raids and immediately close the business. A previous study of 1,000 DART raids disclosed only 68 instances in which the power was not cut and a vacate order issued. In those few cases where the businesses

are not physically closed and sealed, the City nonetheless requires the immediate correction of all alleged defects without referring the matter to the Code Enforcement Board.

41.     Defendants do not give notice of the alleged code enforcement violations in advance of the DART raids because they do not want to give citizens the opportunity to come into compliance with the City's codes; compliance is not the motivating factor. Instead, Defendant have utilized Chapters 420 and 518 as an excuse to close businesses, including Plaintiff's, without notice or hearing and without any effective administrative or judicial remedy.

42.     The selection of commercial targets for DART raids is motivated entirely by a desire to harass and destroy disfavored businesses because of hostility to their speech activities, and is not founded on any legitimate law enforcement purpose or any actual knowledge of code violations.

43.     The DART raids against adult entertainment establishments, including Plaintiff's, often occur on a Friday or Saturday night and generally take place during the busiest time of the night (between 10:00 P.M. and 1:00 A.M.). The timing of the raids is specifically intended to be disruptive and to have the most negative effect possible on employees, performers and patrons of bikini bars.

44.     With only two known exceptions, Sheriff's officers have not obtained warrants prior to the DART raids. In the cases where a search warrant was obtained (as occurred in the DART raid which is the subject of this litigation), the warrant was executed *prior to* the actual DART raid and the fire and safety inspection occurred independently of the search warrant.

45.     In few or no cases is there an actual emergency which would require the immediate closure of a business. Rather, the alleged violations are mundane and routine matters involving such things as exit lighting, issues pertaining to signs, use of extension cords, complaints that various repairs require city permits and, in one instance, a claim that a bathroom was missing a soap dispenser.

46.     The Defendants' several orders to cut electric power to bikini bars like Plaintiff's have nothing to do with the severity of the alleged violations. Instead, electricity has been turned off to prevent disfavored businesses from operating their businesses and to thwart their efforts to correct and repair the minor violations allegedly discovered during the DART raids.

47.     While the Defendants claim that the condition of DARTed structures is so severe as to require condemnation, affected business are often able to fix the minor defects within times ranging from two to fourteen days (even when the power was turned off necessitating the use of generators to conduct the repairs).

## PRIOR DART LITIGATION

48.     The Defendants' abuse of the DART process led to two prior Federal civil rights suits in 2008 and again in 2013. *See*, Jacksonville Property Rights Association, Inc. v. City of Jacksonville, Case No. 3:08-cv-887-HLA-JRK (M.D. Fla.) and H & J Land Investments, Inc., et. al v. City of Jacksonville, Case No. 3:13-cv-1174-MMH-PDB (M.D. Fla.).

49.     The 2008 litigation involved abuses by the City's Code Compliance Division which conducted repeated DART raids under the auspices of Chapter 518 of the Jacksonville Code.

50.    The case was settled when the City agreed to extensive revisions to the substance and procedure for emergency closure orders issued by the Building Official under Chapter 518. In terms of substantive changes, the new code adopted a stringent standard for determining whether exigent circumstances exist. The new code also requires that the alleged defects be specifically identified and that a high-ranking code official must approve the closure order. Procedural protections were also adopted to require prompt notice to the landowner and to provide an immediate hearing (within five days) to challenge the closure order. Most importantly, the landowner was to be advised in writing of his right to appeal the decision. If the closure order is challenged, there is a safe harbor provision that requires the restoration of the *status quo* (*i.e.* re-opening of the business and restoration of electric power) if the Building Official does not re-certify the existence of an emergency under oath. The burden of proof at any hearing is placed on the City and that burden is a high one (equivalent to that necessary to secure a preliminary injunction in a Circuit Court).

51.    Unfortunately, the City engaged in a "bait and switch" by settling the original Federal suit with no actual intent to abandon its abusive DART raids or the gross abuse of due process rights occasioned by those raids.

52.    After the settlement of the 2008 litigation, the City continued to conduct DART raids without notice or a hearing and with routine declarations of emergencies resulting in the closure of disfavored businesses. However, these later raids were conducted by the Fire Marshall rather than by building officials, and the closure orders were issued under the auspices of Chapter 420, which lacked the due process protections the City adopted for Chapter 518 in response to the first Federal suit.

53.     Those continued DART raids under the auspices of Chapter 420 led directly to the filing of the 2013 Federal litigation. Suit was brought against the CITY and against JONES individually, alleging that Chapter 420 was unconstitutional on its face and as applied.

54.     The 2013 Federal litigation was resolved essentially the same way the 2008 litigation had been: the City adopted extensive revisions to Chapter 420 so that they mirrored the reforms adopted with respect to Chapter 518.

55.     The key reform to Chapter 420 was the adoption of due process protections which included an immediate hearing upon request by the business owner. Those reforms were codified in §420.111(c) and (d) of the Jacksonville Code:[1]

> (c)     In all cases in which the Chief, Fire Prevention Division has ordered all occupants removed from the building, structure or premises, electrical service to the unsafe or hazardous condition(s) terminated, and/or further occupancy or operation of the property contingent on correction of the unsafe or hazardous condition(s) or code violation(s), the Chief, Fire Prevention Division shall give written notice to the property owner and the occupants of the Chief's actions within two business days of the issuance of the order (excluding Sundays and legal holidays).
>
> The notice shall include the following:
>
> > (1)     The street address, if any, and a legal description of the property;
> >
> > (2)     A description of the building or structure or portion(s) thereof which constitutes the unsafe or hazardous condition;
> >
> > (3)     A statement of the particular defects, code violations or circumstances which justified the immediate action to protect the health and safety of the public or occupants of the property;
> >
> > (4)     A determination of whether the property is so hazardous so as to prohibit anyone from being physically present inside;

---

[1]   These provisions have a mirror image counterpart in Chapter 518 of the Jacksonville Code. *See*, §518.151. - Emergencies.

(5)    That the property owner or operator shall have an opportunity to require the Chief to demonstrate that his/her actions to abate the unsafe or hazardous condition(s) or code violation(s) were reasonable and warranted by making a written request for such a hearing within 15 days of the determination to the Special Master; and

(6)    A statement that further operation of any unsafe property or physical presence in any unsafe building or structure, whichever the case may be, may result in arrest and criminal prosecution.

The notice required by this Section shall be mailed by certified or express mail or hand delivered to each owner, lessee and occupant of the structure as shown by the public records of Duval County, and shall also be mailed to the owner's agent if such agent's name and address is on file in the Property Appraiser's Office as shown on the latest tax roll.

(d)    Pursuant to this Section, the property owner or operator shall have an opportunity to request a hearing before the Special Magistrate to require the Chief, Fire Prevention Division to demonstrate that his/her actions to abate the unsafe or hazardous condition(s) or code violation(s) were reasonable and warranted by making a written request for such a show cause hearing within 15 days of the determination. The hearing will be held at the next regularly scheduled Special Magistrate hearing, unless the next hearing is less than 48 hours after the determination is made. If a petitioner requests a hearing under this Section, the filing of that request shall automatically stay the effect of the vacate/Cease and Desist Order and/or order terminating electrical service and the parties shall be restored to the status quo ante the issuance of the Chief's Order, unless the Chief, Fire Prevention Division certifies in writing, under oath that, by reason of facts stated in the certificate, a stay would cause an imminent threat to life or safety. In the case of a certificate filed according to the previous sentence, the stay shall be terminated, the order to vacate/cease and desist and/or order to terminate electrical service shall remain in effect, and the parties shall not be restored to the status quo ante. A copy of the Chief's certificate shall be provided to the appealing party by mail on the same day that it is filed with the Special Master.

56.    After the adoption of the substantive and procedural reforms codified in the new versions of Chapters 420 and 518, the pace of DART raids slowed dramatically so that they are now fairly rare events.

## OTHER LITIGATION OF CONSEQUENCE

57.     In addition to the DART litigation referenced above, the parties' relationship has been defined by other lawsuits brought by Plaintiff over the years. Two of those suits concerned the constitutionality of Chapter 151 of the Jacksonville Code, which regulates adult dancing entertainment establishments (colloquially referred to as "bikini bars") such as Plaintiff's. *See*, Wacko's Too, Inc., et al. v. City of Jacksonville, Case No. 3:04-cv-1307-J-32MCR (M.D. Fla.) and Emperor's Gentlemen's Club, Inc., et al. v. City of Jacksonville, Case No.: 3:05-cv-1217-HLA (M.D. Fla.).

58.     The Settlement Agreement reached in Emperor's included a provision acknowledging that Plaintiff's building was a fully conforming structure and that a formal inspection would not be required in order for Wacko's to obtain a dancing entertainment establishment license under Chapter 151 of the Jacksonville Code. The relevant provision of that Agreement, executed on September 25, 2006, reads as follows:

> 3.     The City agrees that as of the date of the Ordinance Amendment, all plaintiffs were in compliance with the applicable building and zoning codes and need not be inspected again in order to qualify for their initital (sic) licenses. This provision shall extend to the following businesses:
>
> e.     Wacko's Too, Inc.

A copy of the Settlement Agreement from the Emperor's litigation is attached as Exhibit "A" to this Complaint.

59.     A similar Settlement Agreement was reach in the Wacko's Too litigation in November of 2006, which likewise acknowledged that Plaintiff was fully compliant with the City's building and zoning codes:

> 4.     The City agrees that as of the date of the Ordinance Amendment, the following Plaintiff establishments were (sic) compliance with the applicable building and zoning codes:

...

    b.    Wacko's Too, Inc. d/b/a "Wacko's Bar & Grill," 3701 Emerson Street, Jacksonville, FL;

An unexecuted, but otherwise complete and accurate copy of the <u>Wacko's Too</u> Settlement Agreement is attached as Exhibit "B" attached to this Complaint.[2]

## **MARCH 30, 2017 DART RAID**

60.    In March of 2017, Plaintiff's building and associated property were in material compliance with the Jacksonville Code of Ordinances and the condition of the building did not pose a threat to anyone's health, safety or welfare, let alone an immediate threat of imminent harm.

61.    There were no code enforcement proceedings against the subject property in March of 2017, nor was Plaintiff informed by the City that the premises were in violation of City codes or other laws.

62.    WACKO'S had been inspected as recently as May 23, 2016 by City code enforcement officers. The only violation noted at that time was that WACKO'S had failed to properly display its most recent Certificate of Use.

63.    Employees of the City's Fire Rescue Department had been on the property as recently as January 4, 2017, when they responded to a call for service. Those employees made no mention of any issues with fire safety or the City's safety codes.

64.    On March 29, 2017, the Florida Division of Alcoholic Beverages & Tobacco (DABT) obtained a search warrant from a State Judge which was directed to: "All and singular the Sheriff or Deputy Sheriffs of Duval County, Florida and all Special Agents

---

[2] The City has a copy of the executed version of the Agreement and it is expected that Plaintiff or the other litigants in the case will be able to produce a signed copy.

of the Division of Alcoholic Beverages and Tobacco". A copy of the search warrant is attached as Exhibit "C" to this Complaint.

65.     The DABT warrant was issued for a law enforcement purpose to seek evidence of one or more crimes; it was not an administrative warrant directing the search of the premises for violations of the fire code or other life safety hazards.

66.     The warrant was executed by DABT officers while the City's deputy sheriffs primarily provided security.

67.     Several performers were arrested for personal possession of drugs or solicitation, but no management personnel were arrested and no criminal charges were brought against the WACKO'S business.

68.     The only thing removed from the premises by DABT in connection with the search was a hard drive used by the business for its video surveillance system.

69.     The DABT officers concluded their search and left without incident.

70.     At that point, JONES entered the premises along with other agents, employees and officers of the CITY.

71.     As will be addressed in more detail below, JONES did not have an administrative warrant or consent to inspect the premises and was not responding to any particular code enforcement complaint. Instead, JONES was taking part in a "DART raid".

72.     On or about March 30, 2017, JONES ordered WACKO'S to close its business for alleged violations of the fire safety code. That closure was conducted on an emergency basis without prior notice or an opportunity to be heard. The closure was effected through a "cease and desist" order which required all persons to vacate the

premises. A copy of JONES' Cease and Desist Order is attached as Exhibit "D" to this Complaint.

73.     The Cease and Desist Order was primarily based on two alleged violations:

A.     Obstruction of a hallway needed for egress by several broken chairs; and

B.     A fire wall which JONES believed was not up to code.

74.     Neither of those alleged violations constituted an emergency which justified the closure of the business. In particular, Plaintiff states:

A.     The chairs allegedly blocking the point of egress could be removed in approximately four minutes and were in fact removed while JONES was still on the premises.

B.     The fire wall is believed to be original to the building and has been in place, unaltered, for as much as 50 years. No agent from the City had ever previously cited the fire wall as being violative of the City Codes despite scores of inspections over the years (including some by JONES). In addition, the City had confirmed that WACKO'S was compliant with all code requirements in the 2006 Emperor's and Wacko's Too Settlement Agreements.

75.     There were no exigent circumstances present which would justify the issuance of a Cease and Desist Order or the closure of Plaintiff's business on March 30, 2017.

76.     While Plaintiff's cause of action does not turn on whether violations did or did not exist on the premises, Plaintiff asserts that JONES was substantively wrong with respect to all, or substantially all, of his conclusions and that they are not well founded in law or fact.

77.     Section 420.111(c) of the Jacksonville Code requires that the Fire Marshall follow-up an emergency Cease and Desist Order with a written notice specifying the precise nature of the violation along with detailed information concerning administrative appellate remedies. That notice must be sent to the owner of the property as well as to the person in possession.

78.     With respect to the March 30, 2017 DART raid, the only notice Plaintiff received was the Notice of Violation issued by JONES on that date (attached as Exhibit "D" to this Complaint).

79.     The form Notice of Violation utilized by JONES does not comply with §420.111(c). In particular, the form Notice does not explain why the alleged violations constitute an emergency so severe that the business must be closed. Furthermore, the Notice does not include any of the information concerning administrative remedies available for challenging the Cease and Desist Order or the time period within which a request for hearing must be made. In addition, neither JONES nor any other City official served any notice on the property owner.

80.     On March 31, 2017, Plaintiff demanded an immediate hearing before a Special Master, pursuant to §420.111(d) of the Jacksonville Code, to challenge JONES' Cease and Desist Order. Plaintiff's Demand for Hearing Before Special Magistrate Pursuant to 420.111, Jacksonville Code" was served on JONES, as well as on the clerk who schedules hearings for the City's Special Master. A copy of Plaintiff's Demand for Hearing is attached as Exhibit "E" to this Complaint.

81.     Section 420.111(d) provides that a business owner is entitled to reopen its business upon making a request for an expedited hearing. Accordingly, Plaintiff reopened Wacko's on the evening of March 31, 2017 pursuant to the automatic stay.

82.     On the same date, and in response to Plaintiff's demand for hearing, JONES executed and served a document entitled "Fire Marshal Certificate Enjoining Stay of Cease and Desist Order Pursuant to 420.111, Jacksonville Code". The Fire Marshall's Certificate asserted that the premises remained an immediate threat to the public health and safety and that it could not lawfully operate. A copy of the Fire Marshall's Certificate is attached as Exhibit "F" to this Complaint.

83.     The Fire Marshall's Certificate did not comply with the technical requirements of §420.111 of the Jacksonville Code. The Certificate was neither sworn nor verified as required by §420.111(d). In addition, JONES did not immediately file a copy of the Fire Marshall's Certificate with the City's Special Master as required by that same code provision.

84.     There was no factual or legal basis for JONES to execute the Fire Marshall's Certificate as he had actual notice at the time he signed the Certificate that there was no emergency and no immediate threat to the public health or safety.

85.     Pursuant to the terms of §420.111(d), the Fire Marshall's Certificate overcame the automatic stay that was in place following the service of Plaintiff's Demand for Hearing. Accordingly, Plaintiff was forced to again close its business.

86.     Section 420.111(d) requires that a hearing be held at the next available date before the Special Master:

The hearing will be held at the next regularly scheduled Special Magistrate hearing, unless the next hearing is less than 48 hours after the determination is made.

87.     Despite service of Plaintiff's Demand for Hearing and actual notice thereof, the Defendants did not schedule an immediate hearing before the Special Master.

88.     The City's Special Magistrate conducted regularly scheduled hearings on April 6, 11, 13, 18, 20 and 25, 2017. Plaintiff's hearing could have been scheduled for any of those dates, but the Defendants failed to schedule the required hearing at that time, or at any subsequent time.

89.     At no time did the Defendants refer the alleged codes violations discovered by JONES to the City's Code Enforcement Board. Neither did the Defendants undertake any other enforcement action to ensure that Plaintiff brought its building up to code. The alleged emergency was addressed only through JONES' Cease and Desist Order and his subsequent Fire Marshall's Certificate.

90.     On April 25, 2017, Plaintiff's counsel sent an e-mail to April Maryland, the Clerk responsible for setting hearings before the City's Special Magistrate, to demand a hearing and inquire why a hearing had not been previously set. A copy of the April 25, 2017 e-mail correspondence is attached as Exhibit "G" to this Complaint.

91.     Because Plaintiff was not granted a hearing of any kind and its business was closed, Plaintiff had no choice but to submit to JONES' demands and to obtain permits to correct the alleged violations.

92.     Plaintiff did not apply for those permits voluntarily and did not agree that any permits were necessary. Plaintiff disputes that its building and premises failed to conform to the City's codes, or that any repairs were required to its building. Plaintiff

applied for the permits and conducted the repairs under duress and at the risk of losing its business, which was closed under administrative order at the time.

93.     In particular, Plaintiff disputes JONES' assertion that its fire wall was not compliant with City codes or that it presented any immediate threat to the public health or safety. Plaintiff alleges that: (1) the fire rating of the wall met current codes requirements; (2) the fire wall was "grandfathered" as a lawful non-conforming structure; and (3) the City confirmed that the firewall met codes requirements when it executed the Emperor's and Wacko's Too settlements in 2006.

94.     JONES allowed Wacko's to reopen in early April when it applied for permits and began undertaking the work JONES specified.

95.     The decision to allow Wacko's to reopen was made in JONES' sole discretion and without participation or review by the Special Master or any other authority.

96.     It is noteworthy that, with the exception of the chairs which were removed from the vicinity of a fire exit, *all* of the alleged defects which JONES had claimed constituted an emergency so severe as to require the immediate closure of the business without notice or a hearing were still present in the building when JONES allowed the business to reopen.

97.     Plaintiff did not receive any response from the City concerning its demand for hearing until May 4, 2017, when April Maryland telephoned to advise that the City would consider setting such a hearing.

98.     The offer to provide a hearing after May 4, 2017 did not conform to the City Codes nor could it have provided any practical relief for the Plaintiff. By the time, the City offered to provide a hearing, Plaintiff had already been forced to obtain permits and much

of the related construction had already been completed at substantial cost to the Plaintiff. The fire wall alone had cost Plaintiff in excess of $19,000 to demolish and reconstruct.

99.     The City's eventual offer to provide a hearing came far too late to vindicate Plaintiff's substantive and procedural rights.

## JONES' INDIVIDUAL CULPABILITY

100.    Defendant JONES has been employed by the Jacksonville Fire and Rescue Department for many years.

101.    As a high-ranking official of the Jacksonville Fire and Rescue Department, JONES is charged with knowledge of clearly established law governing his duties, including the requirements of Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983 (1972) relative to notice and the opportunity to be heard, and Camara v. Mun. Court of City & Cty. of San Francisco, 387 U.S. 523, 87 S. Ct. 1727 (1967), with respect to administrative searches.

102.    JONES has participated in many DART raids and is personally aware that they are used for pretextual and discriminatory purposes and that they target particular businesses, such as Plaintiff's, which are disfavored by the CITY.

103.    JONES has actual knowledge that the CITY employs DART raids as a means of conducting warrantless searches of private property, including that of Plaintiff.

104.    JONES has actual knowledge that a warrantless, non-consensual search of private property for purposes of identifying possible violations of fire or safety codes violates the Fourth Amendment rights of Jacksonville's citizens. In particular, JONES was aware of the case of The Blackstone Building, Inc. v. The City of Jacksonville, Case No.: 3:14-cv-00158-HLA-PDB (M.D. Fla), where the City agreed not to conduct such warrantless, non-consensual searches.

105. JONES had actual knowledge that a warrant had not been issued for the purpose of searching Plaintiff's property on March 30, 2017 and that his search of Plaintiff's property was in violation of the Fourth Amendment.

106. JONES had actual knowledge that Plaintiff's manager had denied consent on March 30, 2017 to search Plaintiff's property. Nonetheless, JONES searched all areas of Plaintiff's property, including all of the non-public areas, knowing at the time that the non-consensual search violated Plaintiff's Fourth Amendment rights.

107. JONES is aware of the prior Federal litigation between Plaintiff and the CITY and is aware that special substantive and procedural guarantees were adopted in Chapter 420 and Chapter 518 in order to settle that litigation.

108. JONES is aware or should have been aware of the Emperor's litigation between Plaintiff and the CITY which established the fact that Wacko's conformed to all of the City's code requirements.

109. JONES is aware or should have been aware of the Wacko's Too litigation between Plaintiff and the CITY which established the fact that Wacko's conformed to all of the City's code requirements.

110. JONES declared that an emergency existed at Plaintiff's building which justified its immediate closure despite actual knowledge that any codes violations were minor and easily remedied.

111. When Plaintiff demanded an immediate hearing before a Special Master, JONES executed a Certificate which required Plaintiff to again close its business despite JONES' actual knowledge that there was no immediate threat to the public health or safety.

112. JONES intentionally refused to schedule a hearing before the City's Special Master, despite demand therefore, so that he could force the Plaintiff to secure permits and conduct repairs in JONES' sole discretion and without oversight by a neutral decisionmaker.

113. JONES intentionally refused to refer the alleged code violations to the City's Code Enforcement Board, so that he could force the Plaintiff to secure permits and conduct repairs in JONES' sole discretion and without oversight by a neutral decisionmaker.

114. Defendant JONES has intentionally violated Plaintiff's First Amendment rights and Plaintiff's right of due process for ignominious and discriminatory purposes. All of JONES' actions described herein have been malicious, invidious, and in complete disregard of Plaintiff's well-established constitutional rights.

## DAMAGES AND ATTORNEY'S FEES

115. Plaintiff has suffered damages as a direct result of Defendants' ordinances, policies and practices and the unconstitutional enforcement of those ordinances, policies and practices. Plaintiff's damages consist of infringement upon Plaintiff's constitutional rights as well as monetary losses. The monetary losses include out-of-pocket expenses for unnecessary and involuntary repairs, lost profits, carrying costs and injury to good will.

116. Plaintiff has retained BENJAMIN, AARONSON, EDINGER & PATANZO, P.A. as their attorneys to represent them in this action and has agreed to pay them a reasonable fee, which fee Defendants must pay pursuant to 42 U.S.C. 1988.

## COUNT I
### (Violation of Fourth Amendment)

117.    Plaintiff realleges the facts set forth in paragraphs 1 through 3 and 5 through 116 of this Complaint and incorporates those facts into this Count by reference.

118.    This is an action for declaratory and supplemental relief pursuant to Title 28, United States Code, §2201 against Defendants KEVIN L. JONES and the CITY OF JACKSONVILLE.

119.    At all times material hereto, Defendant KEVIN L. JONES, was acting within the scope and authority of his position as the Fire Marshall for the CITY OF JACKSONVILLE.

120.    On March 29, 2017, the Florida Division of Alcoholic Beverages & Tobacco (DABT) obtained a search warrant from a State Judge which was directed to: "All and singular the Sheriff or Deputy Sheriffs of Duval County, Florida and all Special Agents of the Division of Alcoholic Beverages and Tobacco". *See*, Exhibit "C.

121.    The DABT warrant was issued for a law enforcement purpose to seek evidence of one or more crimes; it was not an administrative warrant directing the search of the premises for violations of the fire code or other life safety purposes.

122.    On March 30, 2017, special agents of the DABT, accompanied by deputies from the Jacksonville Sheriff's Office, executed the search warrant on Plaintiff's premises seeking evidence of criminal activity as specified in the warrant.

123.    The DABT agents and sheriff's deputies searched the premises for evidence of criminal activity. No agent or deputy searched or purported to search the premises for violations of the fire code or other life safety purposes.

124. At the conclusion of their search, the DABT agents and sheriff's deputies left the Plaintiff's building.

125. Immediately after the DABT agents and sheriff's deputies left the Plaintiff's building, Defendant JONES entered the building accompanied by one or more fire officials.

126. JONES did not search the premises for evidence of those crimes specified in the DABT warrant. Instead, JONES inspected the Plaintiff's building for alleged violations of the fire code and other building code and life safety violations.

127. Prior to entering Plaintiff's building JONES had no probable cause to believe that any fire or safety violations were present.

128. JONES did not have an administrative warrant to search the Plaintiff's building for fire code or other life safety violations.

129. Instead, JONES "piggybacked" onto the DABT criminal warrant.

130. Plaintiff's attorney was present at the scene of the DART raid and had demanded that DABT and JSO officials provide him with a copy of the criminal warrant; a copy was eventually furnished to him.

131. JONES did not attempt to communicate with Plaintiff's attorney and, in particular, did not ask Plaintiff's attorney for permission to search WACKO's building.

132. Instead, JONES, or other agents of the CITY, approached an assistant manager and asked for his consent to search the building.

133. Neither JONES, nor any other fire inspector present, provided Plaintiff's manager with the "Routine Fire Inspection Notice" required pursuant to the Court Order

entered in <u>The Blackstone Building, Inc. v. The City of Jacksonville</u>, Case No.: 3:14-cv-00158-HLA-PDB (M.D. Fla).

134. The assistant manager expressly denied consent to search and advised JONES that he was not authorized to inspect any part of the building.

135. JONES, and other City employees and agents, searched the entirety of Plaintiff's building, including non-public areas such as the kitchen, dressing rooms, bathrooms, and storage and utility cabinets. JONES and his agents passed through closed doors in order to access areas off limits to the public.

136. JONES violated the Fourth Amendment when he entered and searched, Plaintiff's building without a warrant and without consent.

137. JONES obtained information concerning Plaintiff's building and operations from the illegal search of Plaintiff's premises.

138. JONES used the information learned from that illegal search to cite Plaintiff for alleged code violations and to enter a Cease and Desist Order which required that Plaintiff close its business and vacate the premises.

139. JONES used the information learned from that illegal search to seize and take possession of Plaintiff's business and premises for an illegal and improper purpose.

140. Plaintiff's business was closed and Plaintiff and its staff were physically barred from the premises as a direct result of JONES illegal search and subsequent seizure of the Plaintiff's building.

141. Plaintiff was not permitted to enter the building and reopen its business until it complied with all of the arbitrary and improper demands imposed by JONES. Those demands included the submission of a new fire safety plan, obtaining building permits for

unneeded work and the undertaking of construction and renovations, all of which were involuntary mandates imposed by JONES.

142. Any reasonable Fire Marshall or similar inspector would have known that they were not permitted to inspect Plaintiff's premises under these circumstances without a warrant. The requirement that a fire inspector obtain a warrant before conducting such a search has been well-established since at least 1967. *See,* Camara v. Mun. Court of City & Cty. of San Francisco, 387 U.S. 523, 87 S. Ct. 1727 (1967).

143. Plaintiff's suffered damages as a result of the violation of its Fourth Amendment rights by JONES and the CITY OF JACKSONVILLE. Plaintiff's damages consist of infringement upon Plaintiff's constitutional rights as well as monetary losses. The monetary losses include lost profits, the cost of permitting, construction and professional fees required to reopen, and damage its reputation and good will.

WHEREFORE, Plaintiff prays for the following relief:

A. That the Court take jurisdiction over the parties and this cause;

B. That the Court declare that the March 30, 2017 search and seizure of its premises without a warrant violated Plaintiff's Fourth Amendment rights;

C. That the Court enter a judgment for compensatory damages against both Defendants and in favor of Plaintiff, to compensate Plaintiff for its losses.

D. That the Court enter a judgment for punitive damages against Defendant KEVIN L. JONES and in favor of Plaintiff, to compensate Plaintiff for the losses occasioned by Defendant's unlawful and malicious acts;

E. That this court award Plaintiff its recoverable costs including reasonable attorney's fees pursuant to 42 U.S.C. §1988; and

F.     That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT II

**(Violation of Substantive and Procedural Due Process Rights – As Applied)**

144.   Plaintiff realleges the facts set forth in paragraphs 1 through 3 and 5 through 116 and incorporates those facts into this Count by reference.

145.   This is an action for declaratory and supplemental relief pursuant to 28 U.S.C. §2201.

146.   Plaintiff has a clear legal right to provide exotic entertainment to consenting adult patrons without fear of retaliatory conduct and selective enforcement by the City. Such communication is protected under the First Amendment to the United States Constitution. Furthermore, government actions to enforce local laws must afford due process to Plaintiff and similarly situated businesses.

147.   JONES ordered the closure of Plaintiff's business and required Plaintiff to vacate the property without prior notice or an opportunity to be heard. There was no pre-deprivation hearing of any kind.

148.   The declaration of emergency and the Cease and Desist Order issued by JONES were entirely pretextual and intended to retaliate against Plaintiff because of Plaintiff's production of exotic dance entertainment and Plaintiff's prior suits against the CITY and against JONES in his individual capacity.

149.   There were no exigent circumstances present in the instant case. Plaintiff alleges the following particulars:

A.     The building had been routinely and recently inspected by both City Codes Compliance Officers and Fire Safety Officers with no significant violations having been noted.

B.     JONES had no probable cause to believe that the structure was out of compliance at the time of his warrantless inspection. No code violations were suspected in advance of the DART raid; rather they were invented after the illegal inspection.

C.     Plaintiff's interior plans were approved by the City as recently as 2007.

D.     In the prior Emperor's and Wacko's Too litigation, the City expressly acknowledged that Plaintiff's building complied with all of the City's building and zoning regulations.

E.     The fire wall, which was the key violation noted by JONES, had been in place for decades and was "grandfathered in" as a lawful structure. Furthermore, no prior CITY official had ever cited the business for a violation in connection with that wall or even suggested that the fire wall was non-compliant. As a factual matter, the original fire wall in place met the separation standards applicable to Plaintiff's structure.

F.     Many of the remaining violations were capable of swift and complete remediation within a matter of minutes, as was true for the chairs blocking egress, the extension cord, and provision of a master key (the function of a "Knox box"). Other violations were merely technical paperwork matters, such as the claim that Plaintiff's occupant load might have to be reevaluated.[3]

---

[3] The Jacksonville Code prohibits the closure of a business on an emergency basis based on the failure to secure a permit. See, §420.111(a) ("The mere existence of a code violation for a failure to secure permits shall not justify an order to vacate under this subsection."). Historically, such claims of technical non-compliance had been a common basis for closure orders issued in connection with a DART raid.

G.     JONES permitted the business to reopen a few days after service of the Cease and Desist Order once Plaintiff agree to undertake the renovations JONES specified and to apply for the permits which JONES required. However, at the time the business reopened none of the most important repairs had actually been undertaken and the premises was in substantially the same condition as it was when JONES pronounced it an immediate threat to public safety.

150.     The Cease and Desist Order issued by JONES was inadequate and failed to afford due process to the Plaintiff because it did not include the information required by §420.111(c) of the Jacksonville Code and was not later supplemented by the notice contemplated by that code provision. In particular, the Order was defective in the following respects:

A.     The Order (Notice of Violation) did not include an explanation as to why the property was so hazardous that persons must be physically excluded from the building. *See*, §420.111(c)(4).

B.     The Order (Notice of Violation) did not include a statement that the property owner or party in possession had a right to request review before a Special Master. *See*, §420.111(c)(5).

C.     The Order (Notice of Violation) did not include a statement that the property owner or party in possession must file the request for hearing in writing within 15 days. *See*, §420.111(c)(5).

D.     The Order (Notice of Violation) did not warn the recipient that he is subject to arrest and prosecution if he enters the property in contravention of a cease and desist order. *See*, §420.111(c)(6).

D.    The Order (Notice of Violation) was not sent to the property owner. *See,* §420.111(c) – last (unnumbered) clause.

151.    The failure to provide the information required under §420.111(c) of the Jacksonville Code also represents a failure to comply with the minimum due process requirements of the Fourteenth Amendment.

152.    The Due Process Clause requires that there be an immediate post-deprivation hearing when exigent circumstances exist.

153.    The revised version of Chapters 420 and 518 likewise require that a post-deprivation hearing be conducted at the next regularly-scheduled Special Master hearing.

154.    In this instance, the next hearing before the Special Master was scheduled for April 6, 2017. Had the CITY set a hearing on April 6th in response to Plaintiff's demand for hearing, it would have complied with its Ordinances and with the fundamental requirements of due process.

155.    As these facts have shown the CITY, *never* set a hearing despite the service of a timely written Demand for Hearing, followed by a letter from counsel.

156.    Likewise, the City never referred the alleged violations to its Code Enforcement Board, which would have provided an alternate, albeit much slower, forum to challenge JONES' Orders and directives.

157.    By the time that the Defendants took their first steps toward providing a hearing – on May 4, 2017 – it was far too late; Plaintiff had already applied for permits and substantially completed renovations in order to reopen its business.

158.    The failure to provide either pre-deprivation notice and a hearing, or a prompt post-deprivation hearing, left Plaintiff at the mercy of JONES unfettered discretion.

Plaintiff was forced to capitulate to all of JONES demands and requirements as there was no other way for Plaintiff to reopen its business and JONES' decisions were unreviewable under the facts of this case.

159.    The failure to provide either pre-deprivation notice and a hearing, or a prompt post-deprivation hearing, caused Plaintiff significant damages. In addition to the loss of profits and good will caused by the closure of its business, Plaintiff was forced to expend significant sums for repairs and renovations which were unneeded and could not have been mandated given Plaintiff's vested rights, rights secured under settlement agreements, and the actual language of the City's Codes.

160.    The closure of Plaintiff's business through the Cease and Desist Order violated the Due Process Clause as applied because the Defendants failed to provide either pre-deprivation notice and a hearing or a prompt post-deprivation hearing.

WHEREFORE, Plaintiff prays for the following relief:

A.    That the Court take jurisdiction over the parties and this cause;

B.    That the Court declare that the closure of Plaintiff's business pursuant to the Cease and Desist Order violated the Due Process Clause as applied to the Plaintiff;

C.    That the Court enter a judgment against the Defendants for compensatory damages to compensate Plaintiff for its losses.

D.    That the Court enter a judgment for punitive damages against Defendant KEVIN L. JONES and in favor of Plaintiff, to compensate Plaintiff for the losses occasioned by Defendant's unlawful and malicious acts;

E.    That this court award Plaintiff its recoverable costs including reasonable attorney's fees pursuant to 42 U.S.C. §1988; and

F.    That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT III

### (Violation of First Amendment Rights – As Applied)

161.    Plaintiff realleges the facts set forth in paragraphs 1 through 3 and 5 through 116 of this Complaint and incorporates those facts into this Count by reference.

162.    This is an action for declaratory relief pursuant to 28 U.S.C. §2201.

163.    As noted above, Jacksonville has campaigned over many years to rid its community of businesses offering sexually explicit speech. Now that those legislative efforts have been largely thwarted, the CITY is turning to more direct measures to target individual adult businesses such as Plaintiff's.

164.    Defendants have employed Chapters 420 and 518 against Plaintiff in an intentionally discriminatory fashion because Defendants object to the content of Plaintiff's speech.

165.    Defendants have employed Chapters 420 and 518 against Plaintiff in an intentionally discriminatory fashion because Defendants intend to punish and retaliate against Plaintiff for Plaintiff's prior suits against the CITY and against JONES in his individual capacity.

166.    While Chapters 420 and 518 are laws of general application and are content-neutral on their face, the Defendants have used those laws for a content-based and discriminatory purpose; to-wit: to prevent Plaintiff from offering exotic dance entertainment; to punish and retaliate against Plaintiff for its previous litigation against the

Defendants; and to dissuade other citizens from engaging in such First Amendment-protected activities by way example.

167. Even if Chapters 420 and 518 are constitutional on their face, they have been applied in such a manner as to intentionally deprive Plaintiff of its First Amendment rights by creating a prior restraint. That prior restraint was both created and removed in JONES' sole discretion. JONES intentionally abused his discretion with the purpose and effect of depriving Plaintiff of its First Amendment rights.

168. The declaration of emergency and the Cease and Desist Order issued by JONES were entirely pretextual and intended to retaliate against Plaintiff because of Plaintiff's production of exotic dance entertainment and Plaintiff's prior suits against the CITY and against JONES in his individual capacity.

169. The Cease and Desist Order violated Plaintiff's First Amendment Right to petition government for redress of grievances and punished Plaintiff for past efforts to secure relief in the Courts.

170. The Cease and Desist Order was imposed without prior notice to the Plaintiff, on the basis of a preliminary administrative determination only, and with no judicial review whatsoever. Furthermore, the failure and refusal of the Defendants to provide a prompt post-deprivation hearing, despite demand therefore, ensured that the prior restraint would evade any administrative or judicial review.

WHEREFORE, Plaintiff prays for the following relief:

A.    That the Court take jurisdiction over the parties and this cause;

B.    That the Court declare that the closure of Plaintiff's business pursuant to the Cease and Desist Order violated the First Amendment as applied to the Plaintiff;

C.      That the Court enter a judgment against the Defendants for compensatory damages to compensate Plaintiff for its losses.

D.      That the Court enter a judgment for punitive damages against Defendant KEVIN L. JONES and in favor of Plaintiff, to compensate Plaintiff for the losses occasioned by Defendant's unlawful and malicious acts;

E.      That this court award Plaintiff its recoverable costs including reasonable attorney's fees pursuant to 42 U.S.C. §1988; and

F.      That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT IV
### (Violation of Equal Protection)

171.    Plaintiff realleges the facts set forth in paragraphs 1 through 3 and 5 through 116 of this Complaint and incorporates those facts into this Count by reference.

172.    This is an action for declaratory relief pursuant to Title 28, United States Code, §2201.

173.    Plaintiff has a clear legal right to provide exotic entertainment to consenting adult patrons without fear of retaliatory conduct and selective enforcement by Defendants. Such communication is protected under the First Amendment to the United States Constitution.

174.    As noted above, Jacksonville has campaigned over many years to rid its community of businesses offering sexually explicit speech. Now that those legislative efforts have been largely thwarted, the City is turning to more direct measures to target individual adult businesses such as Plaintiff's.

175. Defendants have employed Chapters 420 and 518 against Plaintiff, and other bikini bars, in an intentionally discriminatory fashion because Defendants object to the content of Plaintiff's speech.

176. The DART raids and closure orders directed against bikini bars are content-based actions specifically intended to deprive Plaintiff, and others, of their First Amendment rights.

177. Other commercial establishments in Jacksonville offer live entertainment such as bands, deejays and stage shows.

178. With the exception of the fact that Plaintiff offers exotic dance performances for the enjoyment of their patrons, Plaintiff's business is completely indistinguishable from other commercial establishments offering live entertainment.

179. Other commercial establishments featuring live entertainment operate in close proximity to Plaintiff's club and cannot be distinguished in terms of size, location, neighborhood composition or other geographic and social factors from Plaintiff's establishment.

180. The City' code compliance and fire safety officers do not typically take proactive action against other commercial establishments. Instead, Defendants takes code enforcement action only after receiving a particular complaint against those conventional businesses.

181. Defendants do not use DART raids against other commercial establishments. Instead, Defendants employ the "normal" code enforcement process, which provides for notice and a due process hearing before any final administrative action takes place.

182. Defendants employ DART raids and issue closure orders against Plaintiff's business, and other bikini bars, because they object to the content of their speech and wish to censor and eliminate sexually explicit communications in Jacksonville.

183. Defendants punish Plaintiff, and other similarly situated bikini bars, and selectively enforce the laws against them in order to retaliate against them for exercising their fundamental constitutional rights.

184. Even among bikini bars, Plaintiff's business has been singled out for especially intense and selective enforcement because of and in retaliation for Plaintiff's prior litigation against the Defendants.

185. Reliance on Chapter 420 in this instance was entirely pretextual. Defendants knew that there are no serious code violations at Plaintiff's establishment. Defendants also knew that Plaintiff's business does not pose an immediate threat to the health, safety or welfare of the community. The Cease and Desist Order was motivated entirely by an intent to harass Plaintiff and deny Plaintiff its right of free speech.

186. Defendants selectively enforced the City's code enforcement laws and procedures against the Plaintiff in violation of Plaintiff's right of Equal Protection.

WHEREFORE, Plaintiff pray for the following relief:

A. That the Court take jurisdiction over the parties and this cause;

B. That the Court declare that the emergency Case and Desist Order issued against Plaintiff was pretextual and represents the selective enforcement of the laws against Plaintiff in violation of the Equal Protection Clause of the Fourteenth Amendment;

C. That the Court enter a judgment against both Defendants for compensatory damages against Defendants and in favor of Plaintiff, to compensate Plaintiff for their losses.

D. That the Court enter a judgment for punitive damages against Defendant KEVIN L. JONES and in favor of Plaintiff, to compensate Plaintiff for the losses occasioned by Defendant's unlawful and malicious acts;

E. That this court award Plaintiff its recoverable costs including reasonable attorney's fees pursuant to 42 U.S.C. §1988; and

F. That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT V
### (Breach of September 2006 "Emperor's" Settlement Agreement - State Law)

187. Plaintiff realleges each and every allegation in paragraphs 2, 4, 8 through 23, 48 through 58, 60 through 76, 91 through 96, and 115 through 116 of this Complaint and incorporates them herein by reference.

188. This Court has jurisdiction over this state law cause of action because Plaintiff's other claims involve Federal Questions and this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

189. This is an action under Florida law against the CITY OF JACKSONVILLE for breach of contract.

190. On or about September 25, 2006, the Plaintiff and the CITY OF JACKSONVILLE entered into a settlement agreement in the case of Emperor's

Gentlemen's Club, Inc. et al v. City of Jacksonville, Case No.; 3:05-cv-1217-J-32TEM (M.D. Fla.). *See*, Exhibit "A".

191. By settling and dismissing its claims on the agreed terms, Plaintiff gave good consideration in exchange for the CITY's contractual representations, promises and undertakings as set forth in the Agreement.

192. Among the contractual terms was an acknowledgment that Plaintiff's building was in full compliance with the City's code provisions:

> 3. The City agrees that as of the date of the Ordinance Amendment, all plaintiffs were in compliance with the applicable building and zoning codes and need not be inspected again in order to qualify for their initial licenses. This provisions shall extend to the following businesses:
>
> ...
>
> e. Wacko's Too, Inc.

193. Plaintiff has performed and complied with the terms and conditions of the aforesaid Settlement Agreement.

194. The building and premises at Wacko's has not undergone any material changes or renovations since the date of execution of the said Settlement Agreement. In particular, Plaintiff did not install any fire walls or alter any existing fire walls; did not materially change its floor plan or increase its occupancy; did not change its entrance and exit doors; and made no other change in the premises which would take it out of compliance with the City's code provisions.

195. Plaintiff was either "grandfathered in" with respect to any revisions of the CITY's code since September 25, 2006 (*i.e.* it was treated as a lawful non-conforming use that did not have to come into compliance with new code requirements) or the changes in the code did not affect Plaintiff's business.

196.	Subsequent to September 25, 2006, Plaintiff's business has been subject to annual inspections with no finding of any significant fire safety issue.

197.	Notwithstanding the City's agreement that Plaintiff's business premises met all code requirements on September 25, 2006, and notwithstanding the fact that Plaintiff made no changes in its business premises, and notwithstanding the fact that Plaintiff has passed all of its annual inspections without incident, JONES ordered Plaintiff to close its business on March 30, 2017, without warning or notice, on an entirely pretextual basis.

198.	The CITY breached the parties' September 25, 2006 Settlement Agreement by closing Plaintiff's business on March 30, 2017, for an alleged violation of the City codes.

199.	Plaintiff suffered damages as a result of the City's breach of contract in the form of lost profits, the permitting, construction and professional fees required to reopen, and damage its reputation and good will.

WHEREFORE, Plaintiff, WACKO'S TOO, INC., demands judgment against Defendant, CITY OF JACKSONVILLE., for damages together court costs and all other relief the Court may deem just.

## COUNT VI
### (Breach of October 2006 "Wacko's Too" Settlement Agreement - State Law)

200.	Plaintiff realleges each and every allegation in paragraphs 2, 4, 8 through 23, 48 through 57, 59 through 76, 91 through 96, and 115 through 116 of this Complaint and incorporates them herein by reference.

201. This Court has jurisdiction over this state law cause of action because Plaintiff's other claims involve Federal Questions and this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

202. This is an action under Florida law against the CITY OF JACKSONVILLE for breach of contract.

203. In October 2006, the Plaintiff and the CITY OF JACKSONVILLE entered into a settlement agreement in the case of Wacko's Too, Inc., et al. v. City of Jacksonville, Case No. 3:04-cv-1307-J-32MCR (M.D. Fla.). *See*, Exhibit "B".

204. Although the relevant relief afforded to Plaintiff was similar, the aforesaid settlement agreement was separate from and not dependent upon the earlier agreement between the parties in the Emperor's litigation addressed in the preceding count.

205. By settling and dismissing its claims on the agreed terms, Plaintiff gave good consideration in exchange for the CITY's contractual representations, promises and undertakings as set forth in the agreement.

206. Among the contractual terms was an acknowledgment that Plaintiff's building was in full compliance with the City's code provisions:

> 4. The City agrees that as of the date of the Ordinance Amendment, the following Plaintiff establishments were compliance with the applicable building and zoning codes:
> ...
> b. Wacko's Too, Inc. d/b/a "Wacko's Bar & Grill," 3701 Emerson Street, Jacksonville, FL...

207. Plaintiff has performed and complied with the terms and conditions of the aforesaid Settlement Agreement.

208. The building and premises at Wacko's has not undergone any material changes or renovations since the date of execution of the said settlement agreement. In

particular, Wacko's did not install any fire walls or alter any existing fire walls; did not materially change its floor plan or increase its occupancy; did not change its entrance and exit doors; and made no other change in the premises which would take it out of compliance with the City's code provisions.

209. Plaintiff was either "grandfathered in" with respect to any revisions of the CITY's code since October 2006 (*i.e.* it was treated as a lawful non-conforming use that did not have to come into compliance with new code requirements) or the changes in the code did not affect Plaintiff's business.

210. Subsequent to October 2006, Plaintiff's business has been subject to annual inspections with no finding of any significant fire safety issue.

211. Notwithstanding the City's agreement that Plaintiff's business premises met all code requirements in October 2006, and notwithstanding the fact that Plaintiff made no changes in its business premises, and notwithstanding the fact that Plaintiff has passed all of its annual inspections without incident, the JONES ordered Plaintiff to close its business on March 30, 2017, without warning or notice, on an entirely pretextual basis.

212. The CITY breached the parties' October 2006 Settlement Agreement by closing Plaintiff's business on March 30, 2017, for an alleged violation of the City codes.

213. Plaintiff suffered damages as a result of the City's breach of contract in the form of lost profits, the permitting, construction and professional fees required to reopen, and damage its reputation and good will.

WHEREFORE, Plaintiff, WACKO'S TOO, INC., demands judgment against Defendant, CITY OF JACKSONVILLE., for damages together court costs and all other relief the Court may deem just.

## COUNT VII

### (Negligent Supervision - State Law Claim)

214. Plaintiff realleges each and every allegation in paragraphs 2, 4 and 8 through 116 of this Complaint and incorporates them herein by reference.

215. This Court has jurisdiction over this state law cause of action because Plaintiff's other claims involve Federal Questions and this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

216. This is an action under Florida law against the CITY OF JACKSONVILLE for the negligent supervision of certain of its employees.

217. At all times material hereto, the CITY OF JACKSONVILLE employed KEVIN L. JONES as its Fire Marshall. JONES was specifically charged with the enforcement of the City's fire code and was authorized to issue vacate orders under Chap. 420 of the City's Code.

218. At all times material hereto, Defendant CITY OF JACKSONVILLE employed April Maryland as the Administrative Aide in the Special Magistrate's Administrative Office (Municipal Code Compliance Division). Maryland is the "point person" or public contact for the Special Magistrate and was charged with processing and setting requests for expedited hearings before the Special Magistrate pursuant to §420.111 of the City's Code.

219. JONES is a high-ranking official within the CITY OF JACKSONVILLE, but he answers to superiors who are charged with supervising his work.

220. Maryland is apparently in a clerical position and was supervised by both the person(s) appointed as Special Magistrate(s) and by the director of the Code Compliance

Division.

221. The CITY owes a duty to its citizens, and to Plaintiff in particular, to exercise due care in the supervision of its employees, including JONES and Maryland.

222. The duty to supervise employees is especially acute when the CITY delegates to those employees the authority to order citizens to vacate their property without notice, hearing or a court decree.

223. The duty to supervise employees includes the duty to ensure that they follow basic constitutional requirements, such as the need to obtain a warrant before conducting an administrative search, and setting a prompt post-deprivation hearing to accord due process.

224. JONES made significant mistakes of law and judgment when conducting the inspection of Plaintiff's premises, making the decision to issue a vacate order without notice or hearing, and in his subsequent handling of Plaintiff's challenge to his decision and request for a hearing. Plaintiff alleges the following aspects in which JONES' mistakes rose to the level of obvious negligence or willfulness:

A. His search and seizure of Plaintiff's premises without a warrant.

B. His declaration of an emergency where there clearly was no immediate threat to life or property.

C. His order to Plaintiff to vacate the premises without notice or an opportunity to be heard where the alleged violations were (i) not remarked upon in the course of numerous previous inspections over the course of decades; (ii) largely minor and capable of cure within minutes; (iii) included paper work matters of a bureaucratic nature with no immediate impact on life or safety; and (iv) already addressed in two settlement agreements

which found that Plaintiff's premises conformed to code.

D.    His failure to serve a notice which complied with §420.111(c) of the Jacksonville Code. The Notice of Violation / Cease and Desist Order does not explain why the alleged violations constitute an emergency so severe that the business must be closed. In addition, the Notice does not include any of the information concerning administrative remedies available for challenging the Cease and Desist Order or the time period within which a request for hearing must be made. In addition, JONES failed to serve any notice on the owner of the property.

E.    His execution of a "Certificate Enjoining Stay of Cease and Desist Order Pursuant to 420.111, Jacksonville Code", which Certificate did not conform to the requirements of the City Code because it was neither sworn to under oath nor verified.

F.    His decision to force Plaintiff to re-close Wacko's after Plaintiff's served its demand for a hearing, where that decision: (i) was clearly not founded on any emergency based on facts then known to JONES; and (2) was based on an unverified Certificate that did not conform to the City's Code.

G.    His failure to ensure that a prompt post-deprivation hearing was scheduled following the March 31, 2017 service of Plaintiff's "Demand for Hearing before Special Magistrate Pursuant to 420.111, Jacksonville Code".

H.    His failure to refer the alleged violations to the Code Enforcement Board which would have provided an alternative forum for Plaintiff to challenge JONES' decision.

225.    JONES' mistakes were compounded and enabled by Maryland's failure to schedule an immediate post-deprivation hearing as mandated by the City's Code and by

the Due Process Clause of the Fourteenth Amendment.

226.     As alleged above, Plaintiff served its Demand for Hearing on March 31, 2017 which demand was served on JONES and Maryland directly.

227.     Pursuant to §420.111(g) of the Jacksonville Code, Plaintiff was entitled to a hearing before the Special Magistrate at his first availability unless that would be within 48 hours or less of the request. Publicly available information shows that the Special Master could have heard Plaintiff's case as early as April 4, 2017 and that he also held hearings on April 6, 11, 13, 18, 20 and 25, 2017.

228.     Maryland did not set a hearing with the Special Master and JONES apparently did not follow up or inquire why that was the case.

229.     On April 25, 2017, Plaintiff's counsel wrote to Ms. Maryland, inquiring why a hearing had not been set and again demanding that an expeditious hearing be held.

230.     Maryland made no reply until May 4, 2017, by which time Plaintiff had already expended all the funds and effort required to reopen its business so that the administrative remedy was essentially moot and unavailing.

231.     The CITY knew or should have known that:

A.     JONES conducted an administrative search of Plaintiff's business for the purpose of finding codes violations despite the fact that he lacked a warrant and after having been specifically denied consent to conduct such a search.

B.     JONES conducted an administrative search of Plaintiff's business for the purpose of finding codes violations without tendering the "Routine Fire Inspection Notice" required pursuant to the Court Order entered in The Blackstone Building, Inc. v. The City of Jacksonville, Case No.: 3:14-cv-00158-HLA-PDB (M.D. Fla).

C.    There was no basis for JONES to order the emergency closure of Plaintiff's business without notice or an opportunity to be heard.

D.    JONES failed to serve a notice of violation which conformed to the requirements of §420.111(c) of the Jacksonville Code.

E.    JONES' "Certificate Enjoining Stay" was facially defective under §420.111(d) of the Jacksonville Code because it was not sworn to under oath.

F.    JONES failed to file a copy of the Certificate Enjoining Stay with the City's Special Master.

G.    JONES was engaged in a punitive campaign against the Plaintiff due to Plaintiff's speech activities and Plaintiff's prior litigation against JONES.

H.    Plaintiff had served a request for an immediate hearing before the Special Master pursuant to §420.111(d) of the Jacksonville Code., but no such hearing had ever been conducted or even scheduled.

232.    The need to closely supervise JONES was especially obvious as his shortcoming in ability, judgment and temperament had already been brought to the attention of the CITY. The CITY has previously been sued in this Court on at least three occasions for actions stemming either wholly or partly from JONES' negligence and unfamiliarity with both City Codes and the requirements of the Constitution. Those previous lawsuits include:

A.    Jacksonville Property Rights Association, Inc. et al v. City of Jacksonville, Case No.: 3:08-cv-887-HLA-JRK (M.D. Fla.) – CITY paid damages and attorney's fees and substantially amended its code (Chapter 518) to correct improper practices and procedural defects arising from DART raids in which JONES played a prominent part.

B.     H & J Land Investments, Inc. et al. v. City of Jacksonville et al, Case No.: 3:13-cv-01174-MMH-PDB (M.D. Fla.) - CITY substantially amended its Chapter 420 to correct improper practices and procedural defects arising from DART raids in which JONES played a prominent part and was named as an individual Defendant.

C.     The Blackstone Building, Inc. v. The City of Jacksonville, Case No.: 3:14-cv-00158-HLA-PDB (M.D. Fla) – Class action suit brought in reaction to warrantless administrative searches by JONES – resulted in new procedures in which, *inter alia*, citizens are advised that they have a right to refuse to submit to a warrantless search.

233.     Reasonable managers and supervisors would have recognized the dangers posed by JONES and Maryland in this case (and others) and would have taken remedial action to guard against or correct their errors.

234.     The CITY OF JACKSONVILLE breached the duty of care owed to Plaintiff when it failed to properly supervise JONES and Maryland.

235.     Had the CITY OF JACKSONVILLE properly supervised those two employees, Plaintiff would not have been issued the subject vacate order, or Plaintiff would have been able to reopen immediately through the administrative procedures and guarantees that were supposed to have been afforded to it under §420.111 of the Jacksonville Code.

236.     Plaintiff suffered damages as a result of the CITY's negligent supervision of those two employees as the vacate order and subsequent procedural errors led to the prolonged closure of Plaintiff's business. That closure caused Plaintiff to lost profits, the cost of permitting, construction and professional fees required to reopen, and damage its reputation and good will.

237.     Plaintiff served a statutory notice on the CITY pursuant to §768.28 and has otherwise performed all conditions precedent to maintaining this actions, or those conditions have been waived.

WHEREFORE, Plaintiff, WACKO'S TOO, INC., demands judgment against Defendant, CITY OF JACKSONVILLE., for damages together court costs and all other relief the Court may deem just.

## COUNT VIII
### (Negligent Retention - State Law Claim)

238.     Plaintiff realleges each and every allegation in paragraphs 2, 4 and 8 through 116 of this Complaint and incorporates them herein by reference.

239.     This Court has jurisdiction over this state law cause of action because Plaintiff's other claims involve Federal Questions and this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

240.     This is an action under Florida law against the CITY OF JACKSONVILLE for its negligent retention of KEVIN L. JONES.

241.     The CITY owes a duty to its citizens, and to Plaintiff in particular, to exercise due care in the hiring, training and retention of its employees.

242.     The duty to hire, train and retain capable employees is especially acute when the CITY delegates to those employees the authority to order citizens to vacate their property without notice, hearing or a court decree.

243.     The CITY employed KEVIN L. JONES as a firefighter and ultimately promoted him to his current position as Fire Chief / Fire Marshall.

244. The CITY knew or should have known that KEVIN L. JONES is poorly suited to his job due to his inadequate knowledge of City Codes and procedures as well as the requirements of the U.S. Constitution.

245. In the instant case, JONES' negligence and incompetence is apparent in the following respects:

A. His search and seizure of Plaintiff's premises without a warrant.

B. His declaration of an emergency where there clearly was no immediate threat to life or property.

C. His order to Plaintiff to vacate the premises without notice or an opportunity to be heard where the alleged violations were (i) not remarked upon in the course of numerous previous inspections over the course of decades; (ii) largely minor and capable of cure within minutes; (iii) included paper work matters of a bureaucratic nature with no immediate impact on life or safety; and (iv) already addressed in two settlement agreements which found that Plaintiff's premises conformed to code.

D. His failure to serve a notice which complied with §420.111(c) of the Jacksonville Code. The Notice of Violation / Cease and Desist Order does not explain why the alleged violations constitute an emergency so severe that the business must be closed. In addition, the Notice does not include any of the information concerning administrative remedies available for challenging the Cease and Desist Order or the time period within which a request for hearing must be made. In addition JONES failed to serve any notice on the owner of the property.

E.     His execution of a "Certificate Enjoining Stay of Cease and Desist Order Pursuant to 420.111, Jacksonville Code", which Certificate did not conform to the requirements of the City Code because it was neither sworn nor verified.

F.     His decision to force Plaintiff to re-close Wacko's after Plaintiff's served its demand for a hearing, where that decision: (i) was clearly not founded on any emergency based on facts then known to JONES; and (2) was based on an unverified Certificate that did not conform to the City's Code.

G.     His failure to file a copy of the Certificate Enjoining Stay with the City's Special Master.

H.     His failure to ensure that a prompt post-deprivation hearing was scheduled following the March 31, 2017 service of Plaintiff's "Demand for Hearing before Special Magistrate Pursuant to 420.111, Jacksonville Code".

I.     His failure to refer the alleged violations to the Code Enforcement Board which would have provided an alternative forum for Plaintiff to challenge JONES' decision.

246.    The CITY knew or should have known that KEVIN L. JONES is poorly suited to his job by virtue of his temperament, bias and lack of good judgment.

247.    JONES' temperament, bias and lack of good judgment allowed him to utilize the City's DART raids for discriminatory and selective purposes. Through his career with the CITY, JONES has ordered emergency closures against adult dancing establishments, hookah bars and internet cafes while refraining from such orders for nearly all other businesses and residential structures. The obvious disparate impact of the JONES' policies is not due to chance or to actual fire safety issues within those particular industries,

but is the result of invidious and purposeful discrimination because of the JONES' personal dislike for those forms of entertainment.

248.  JONES' obvious negligence, coupled with the intentional discrimination shown in this case, is not an isolated event, but is part of a pattern and practice by JONES which has long been known to the CITY.

249.  The CITY has previously been sued in this Court on at least three occasions which stem either wholly or partly from the JONES' negligence and unfamiliarity with both City Codes and the requirements of the constitution. Those previous lawsuits include:

A.    Jacksonville Property Rights Association, Inc. et al v. City of Jacksonville, Case No.: 3:08-cv-887-HLA-JRK (M.D. Fla.) – CITY paid damages and attorney's fees and substantially amended its code (Chapter 518) to correct improper practices and procedural defects arising from DART raids in which JONES played a prominent part.

B.    H & J Land Investments, Inc. et al. v. City of Jacksonville et al, Case No.: 3:13-cv-01174-MMH-PDB (M.D. Fla.) - CITY substantially amended its Chapter 420 to correct improper practices and procedural defects arising from DART raids in which JONES played a prominent part and was named as an individual Defendant.

C.    The Blackstone Building, Inc. v. The City of Jacksonville, Case No.: 3:14-cv-00158-HLA-PDB (M.D. Fla) – Class action suit brought in reaction to warrantless administrative searches by JONES – resulted in new procedures in which, *inter alia*, citizens are advised that they have a right to refuse to submit to a warrantless search.

250.  On information and belief, Plaintiff alleges that those three Federal cases are not the only time that the City has been sued due to the negligence or intentional acts of JONES.

251.    On information and belief, Plaintiff alleges that the CITY has received complaints about JONES' competence and/or temperament, other than those which resulted in actual litigation.

252.    The CITY had actual and constructive notice that JONES did not have the skill set necessary to do his job; lacked knowledge concerning the procedural and constitutional guaranties that are supposed to protect Jacksonville's citizens; and that his biases and temperament rendered him incapable of fairly administering the CITY's laws.

253.    A reasonable municipality would not have retained JONES in light of the several lawsuits involving him and his obvious inability to fairly carry out the essential functions of his job.

254.    The CITY OF JACKSONVILLE breached the duty of care owed to Plaintiff when it failed to terminate JONES following actual and constructive notice of his inadequacies and biases.

255.    Had the CITY OF JACKSONVILLE terminated JONES upon discovering his incompetence and biases, Plaintiff would not have been issued the subject vacate order, or Plaintiff would have been able to reopen immediately through the administrative procedures and guarantees that were supposed to have been afforded to it under §420.111 of the Jacksonville Code.

256.    Plaintiff suffered damages as a result of the CITY's negligent retention of KEVIN L. JONES as the JONES' vacate order and subsequent procedural errors led to the prolonged closure of Plaintiff's business. That closure caused Plaintiff to lost profits, the cost of permitting, construction and professional fees required to reopen, and damage its reputation and good will.

257. Plaintiff served a statutory notice on the CITY pursuant to §768.28 and has otherwise performed all conditions precedent to maintaining those actions or those conditions have been waived.

WHEREFORE, Plaintiff, WACKO'S TOO, INC., demands judgment against Defendant, CITY OF JACKSONVILLE., for damages together court costs and all other relief the Court may deem just.

BENJAMIN, AARONSON, EDINGER & PATANZO, P.A.

/s/ Gary S. Edinger
GARY S. EDINGER, Esquire
Florida Bar No.: 0606812
305 N.E. 1st Street
Gainesville, Florida 32601
(352) 338-4440/ 337-0696 (Fax)
GSEdinger12@gmail.com
*Attorneys for Plaintiff*